Slip Op. 21-172

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| MID CONTINENT STEEL & WIRE, INC.,<br><br>    Plaintiff/Consolidated Defendant-Intervenor,<br><br>v.<br><br>UNITED STATES,<br><br>    Defendant,<br><br>and<br><br>OMAN FASTENERS, LLC,<br><br>    Defendant-Intervenor/Consolidated Plaintiff. | Before: Mark A. Barnett, Chief Judge<br>Consol. Court No. 15-00214 |

## OPINION AND ORDER

[Remanding the second remand results in this antidumping duty investigation of certain steel nails from the Sultanate of Oman.]

Dated: December 22, 2021

Adam H. Gordon and Ping Gong, The Bristol Group PLLC, of Washington, DC, for Plaintiff/Consolidated Defendant-Intervenor Mid Continent Steel & Wire, Inc.

Mikki Cottet, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for Defendant United States. With her on the brief were Joseph H. Hunt, Assistant Attorney General, Jeanne E. Davidson, Director, and Patricia M. McCarthy, Assistant Director. Of counsel on the brief was Ian McInerney, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, DC.

Michael P. House, Andrew Cardias, and Shuaiqi Yuan, Perkins Coie LLP, of Washington, DC, for Defendant-Intervenor/Consolidated Plaintiff Oman Fasteners, LLC.

Barnett, Chief Judge: This matter arises out of a challenge to the U.S. Department of Commerce's ("Commerce" or "the agency") second remand results in its antidumping duty investigation of certain steel nails from the Sultanate of Oman. *See* Final Results of Redetermination Pursuant to [Second] Court Order ("Second Remand Results"), ECF No. 135-1. The Second Remand Results were issued in response to an opinion by the U.S. Court of Appeals for the Federal Circuit ("Federal Circuit"), wherein the Federal Circuit held that Commerce had not adequately explained its reliance on a financial statement from Hitech Fastener Manufacturer (Thailand) Co., Ltd. ("Hitech"), a third-country company, to determine constructed-value profit because the agency had not sufficiently considered whether Hitech had received countervailable subsidies. *Mid Continent Steel & Wire, Inc. v. United States* ("*Mid Continent III*"), 941 F.3d 530, 542–45 (Fed. Cir. 2019).

The court again remands the determination to Commerce for reconsideration and further explanation of its reliance on Hitech's financial statement. The Second Remand Results are largely conclusory and fail to provide the explanations and analysis required to comply with the findings of the Federal Circuit.

## BACKGROUND

This matter originated when Plaintiff Mid Continent Steel & Wire, Inc. ("Mid Continent") and Defendant-Intervenor Oman Fasteners, LLC ("Oman Fasteners") each challenged separate aspects of Commerce's final determination that Oman Fasteners was selling goods at less than fair value, or "dumping," in the United States. *See Certain Steel Nails From the Sultanate of Oman*, 80 Fed. Reg. 28,972 (Dep't Commerce

May 20, 2015) ("*Final Determination*"), ECF No. 16-1, and accompanying Issues and Decision Mem., A-523-808 (May 13, 2015) ("I&D Mem."), ECF No. 16-2.

When determining whether a company is dumping, section 773(a) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1677b(a) (2012),[1] directs Commerce to calculate the difference between the export price and the normal value, a value usually based on the price at which the merchandise is sold in the exporting country or in a third country other than the United States. *Id.* If, however, there are insufficient home-market and third-country sales, as was the case with Oman Fasteners, Commerce calculates the "constructed value" of the merchandise to use as the normal value. 19 U.S.C. § 1677b(a)(4). Constructed value consists of the sum of (1) the cost of producing the merchandise; (2) amounts for profit and selling, general, and administrative expenses; and (3) the cost of packaging for shipment to the United States. *See* 19 U.S.C. § 1677b(e).

Commerce may use one of four methods to calculate constructed value profit depending on what data is available: the "preferred method," which is based on actual profits and expenses, or one of three alternative methods, among which there is no hierarchy or preference.[2] *See SKF USA Inc. v. United States*, 263 F.3d 1369, 1374 (Fed. Cir. 2001). In this case, because "actual data" were not available as required for the preferred method, Commerce chose to apply the third of the alternative methods, which allows Commerce to utilize "any other reasonable method" to determine

---

[1] Further citations to the Tariff Act of 1930, as amended, are to Title 19 of the U.S. Code, and references to the U.S. Code are to the 2012 edition, unless stated otherwise.
[2] If "actual amounts" of profits and sales, general, and administrative expenses of the company are available, the "preferred method" is used; if no actual data are available, one of the alternative methods is used. 19 U.S.C. § 1677b(e)(2)(A)-(B).

constructed value profit, subject to a profit cap provided in the statute.[3]  *See Mid Continent III*, 941 F.3d at 535–36 (citations omitted); 19 U.S.C. § 1677b(e)(2)(B)(iii). "[A]ny other reasonable method" may include, as Commerce chose in this case, the financial statements from a third-country company.  *See Mid Continent III*, 941 F.3d at 542–545 (remanding for Commerce to reconsider its reliance on Hitech's financial statement for calculating constructed value profit while leaving open the possibility that Commerce may continue to do so).

Oman Fasteners submitted financial data from several Omani companies along with partially translated financial statements from L.S. Industry Co., Ltd. ("LSI"), a Thai producer of steel nails, as proposed sources of constructed value profit. *Id.* at 535.  Mid Continent, in turn, submitted other financial statements, including the statements of Hitech, a Thai producer of steel screws, and Sundram Fasteners Limited ("Sundram"), an Indian producer of auto parts and fasteners. *Id.* at 535–36; I&D Mem. at 14.  For the *Final Determination*, Commerce chose Hitech as the source of constructed value profit, declined to consider the partially translated LSI statements, and found no profit cap available to apply to the constructed value profit determination. *Mid Continent III*, 941 F.3d at 536.

These findings were challenged, and the court remanded the case to Commerce on two issues. *Mid Continent Steel & Wire, Inc. v. United States* ("*Mid Continent I*"), 41

---

[3] Commerce used the third alternative method for its preliminary determination, and then continued to rely thereon for the *Final Determination*. *See Mid Continent III*, 941 F.3d at 536 (citations omitted).

CIT __, 203 F. Supp. 3d 1295 (2017).[4] To address the court's concerns, Commerce issued the First Remand Results. *See* Final Results of Redetermination Pursuant To [First] Court Order ("First Remand Results") at 1, ECF No. 95-1. These First Remand Results were contested at the court, but the court affirmed the results. *Mid Continent Steel & Wire, Inc. v. United States* ("*Mid Continent II*"), 41 CIT __, 273 F. Supp. 3d 1348 (2017).[5] *Mid Continent II* was appealed to the Federal Circuit, which issued *Mid Continent III*.

Before the Federal Circuit, Oman Fasteners challenged several aspects of the First Remand Results. In particular, it challenged (1) Commerce's choice of the third alternative method for calculating constructed value profit, (2) Commerce's refusal to consider LSI's partially translated financial statements and its rejection of LSI's fully translated statements, (3) Commerce's choice of Hitech's financial statements despite potential evidence of a subsidy, and (4) Commerce's conclusion that it could not calculate a profit cap. *See Mid Continent III*, 941 F.3d at 534, 537.

---

[4] *Mid Continent I* remanded Commerce's *Final Determination* with respect to two issues raised by Oman Fasteners: (1) Commerce's reliance on third-country profit data from the production of comparable products instead of home-market profit data to calculate constructed value profit; and (2) Commerce's refusal to apply a profit cap to the constructed value profit rate. *See Mid Continent I*, 203 F. Supp. 3d at 1308–10, 1314–16. The court found that Commerce did "not adequately explain why third-country data of comparable merchandise better represents Omani sales of steel nails than home-market sales data from Omani steel producers." *Id.* at 1310. In addition, the court found that Commerce failed to adequately explain why it could "not make use of 'facts otherwise available' in order to" calculate a profit cap. *Id.* at 1316. The court sustained the remainder of the contested determination. *See id.*

[5] *Mid Continent II* affirmed the First Remand Results, in which Commerce continued to use third-country data to calculate constructed value profit and continued to find that there was insufficient data with which to calculate a profit cap. *See Mid Continent II*, 273 F. Supp. 3d at 1350.

The Federal Circuit affirmed in part, vacated in part, and remanded. *Id.* at 546. The Federal Circuit affirmed the use of the third alternative method for calculating constructed value profit. *Id.* at 538–40. It also affirmed Commerce's decision not to rely on the partial translation of LSI's financial statements, along with the agency's decision to reject the late-submitted full translation of LSI's financial statements. *Id.* at 540–42. With respect to the choice of Hitech's financial statements, while not directing a conclusion about which financial statements should be used, the Federal Circuit held that Commerce must address record information raising questions as to whether Hitech received subsidies. *Id.* at 544–45. In particular, the Federal Circuit rejected Commerce's suggestion that the practice of disregarding financial statements based on suspicion of subsidies was limited to nonmarket-economy proceedings. *Id.* at 544. The Federal Circuit held that Commerce's statement of practice in nonmarket-economy cases failed to substantiate the reasonableness of declining to consider the possible indications of a subsidy in market-economy proceedings generally or in this case specifically. *Id.* The Federal Circuit explained that subsidies could distort a substitute company's financial statements, noting that "[a]s a logical matter, Hitech would be a weaker surrogate for constructed value [profit] if government subsidies heavily distort its profits." *Id.* Consistent with the above, the Federal Circuit remanded to this court to remand to Commerce. *Id.* at 546.

In the Second Remand Results, Commerce largely reiterates its prior conclusions regarding its reliance on third-country profit data and Hitech's financial statements for calculating constructed value profit. *See* Second Remand Results at 3–7.

First, Commerce explained that, of the eleven financial statements on the record, "[n]one of the six Omani companies produce steel nails or any . . . merchandise comparable . . . to steel nails."[6]  *Id.* at 4.  Second, after narrowing the comparable producers to two companies,[7] Hitech and Sundram, Commerce found that, as compared to Oman Fastener's nails, Hitech's screws utilized "similar formation and collation machinery in their production processes," Hitech "[sold] their product[] . . . for the same end use," *id.* at 4, and Hitech's screws had "similar . . . terms of profitability," *id.* at 5.  Sundram, in contrast, "does produce some comparable merchandise, [but] a large portion of its production consists of various automobile parts that are not comparable to nails."  *Id.* at 4.  Commerce therefore concluded that Hitech's statements better reflected the profit of a producer of nails.  *See id.* at 5.

Regarding Hitech's possible receipt of a subsidy from the Thai government, Commerce explained that there was nothing on the record to support the conclusion

---

[6] In order to calculate constructed value profit under the "any other reasonable method" provision, Commerce looks for a company that produces comparable merchandise. Second Remand Results at 3–4.  To this end, Commerce explained that it used the factors from *Pure Magnesium From Israel*, 66 Fed. Reg. 49,349 (Dep't Commerce Sept. 27, 2001) (notice of final determination of sales at less than fair value), and *Certain Color Television Receivers From Malaysia*, 69 Fed. Reg. 20,592 (Dep't Commerce Apr. 16, 2004) (notice of final determination of sales at not less than fair value)), to find a constructed value profit substitute under the third alternative.  Second Remand Results at 8.  These factors include: "(1) the similarity of the potential surrogate companies' business operations and products to the respondent's; (2) the extent to which the financial data of the surrogate company reflects sales in the United States as well as the home market; and (3) the contemporaneity of the surrogate data to the POI."  *Pure Magnesium From Israel*, 66 Fed. Reg. 49,349, and accompanying Issues and Decision Mem., A-508-809 (Sept. 14, 2001); *see also Certain Color Television Receivers From Malaysia*, 69 Fed. Reg. 20,592, and accompanying Issues and Decision Mem., A-557-812 (Apr. 16, 2004).

[7] Commerce re-asserted its refusal to consider the financial statements for two Taiwanese companies and LSI due to the lack of English translations for portions of those financial statements.  *See* Second Remand Results at 4.

that Hitech received a countervailable subsidy. *See id.* While Commerce acknowledged that Hitech's financial statements indicated that "[t]he company has been support for production screws (SCREW) Category 4.7 Manufacture of wire products, metal wire Promotion Number 1447/2538 on July 10, 1995," *id.* at 5 n.19, a statement which refers to a program that Commerce has countervailed in other cases, Commerce noted that the financial statements do not report an amount associated with the potential subsidy and Oman Fastener does not point to any, *id.* at 5. Commerce explained that the "ultimate choice of [constructed value] profit in any given proceeding must be sourced from the record," *id.* at 6, which "will vary by the available choices," *id.* at 7. Commerce notes that each case "stands on its own," *id.* at 5, and, in this case, after weighing the quality of data against the criteria established under 19 U.S.C. § 1677b(e)(2)(B)(iii), record evidence supports its conclusion that Hitech's data more closely reflects the production of nails than does Sundram's, *id.* at 7.

Lastly, Commerce rejected the argument that it should have reconsidered LSI's financial statements. *Id.* at 10–11. Commerce also rejected the argument that it must reopen the record to accept the fully translated version of LSI's financial statements or other possible sources of constructed value profit. *Id.* at 13–14.

Before this court, Oman Fasteners opposes the Second Remand Results because, in its view, Commerce provided an insufficient explanation for its continued reliance on Hitech's financial statements despite having rejected Hitech's statements based on the inclusion of possible subsidies in another proceeding. Cmts. of Pl. Oman Fasteners, LLC in Opp'n to the Commerce Dept's Remand Redetermination ("Pl.'s Opp'n Cmts.") at 7, ECF No. 138 (citing *Steel Wire Garment Hangers From the People's*

*Republic of China*, 79 Fed. Reg. 65,616 (Dep't Commerce Nov. 5, 2014) (prelim. results of antidumping duty admin. review; 2012–2013)).  Oman Fasteners also argues that Commerce ignored alternative sources of constructed value profit data available to the agency, and that Commerce should compare all financial statements on the record— including LSI's rejected statements—along with re-opening the record to obtain all readily available and relevant information.  *See id.* at 17–24.  Due to the deficiencies in the record, Oman Fasteners argues, the Second Remand Results are unlawful and unsupported by substantial evidence.  *Id.* at 25.  Mid Continent and Defendant United States ("the Government") urge the court to sustain Commerce's Second Remand Results in full.  *See* Cmts. of Pl./Consol. Def-Intervenor Mid Continent Steel & Wire, Inc. on Final Remand Determination ("Mid Continent's Resp. to Cmts."), ECF No. 137; Def.'s Resp. to Cmts. on Remand Redetermination ("Def.'s Resp. to Cmts."), ECF No. 142.

For the reasons discussed herein, the court remands Commerce's Second Remand Results, finding that they insufficiently consider whether possible subsidies affect the appropriateness of using Hitech's financial statements in calculating constructed value profit.

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to 19 U.S.C. § 1516a(a)(2)(B)(i) and 28 U.S.C. § 1581(c).  The court will uphold an agency determination that is supported by substantial evidence and otherwise in accordance with law. 19 U.S.C. § 1516a(b)(1)(B)(i).

# DISCUSSION

## I.     Parties' Contentions

Oman Fasteners contends that Commerce did not reconsider or explain its use of Hitech's financial data in calculating constructed value profit despite potential evidence of a subsidy.  See Pl.'s Opp'n Cmts. at 7–17.  Oman Fasteners argues that there is "undisputed" evidence of a subsidy in the record that impacts the usefulness of Hitech's profit data and that evidence precludes Commerce from using Hitech's financial data for constructed value profit.  *Id.* at 7.  Oman Fasteners relies primarily on *Steel Wire Garment Hangers From China*, a determination in which Commerce found that Hitech's financial statements "contain[] evidence of a subsidy [Commerce had] previously found to be countervailable."  *Id.* (citing *Steel Wire Garment Hangers From China*, 79 Fed. Reg. at 65,616) (first alteration in original).  Oman Fasteners argues that, so too here, Commerce must also find evidence of a subsidy and exclude Hitech's financial statements.  *See id.*  Oman Fasteners additionally argues that Commerce should reconsider its refusal to rely on LSI's financial statements or reopen the record due to its many inadequacies.  *See id.* at 17–24.

The Government contends that Commerce complied with the remand order.[8]  Def.'s Resp. to Cmts. at 7.  The Government emphasizes that, in reconsidering Hitech's financial statements, Commerce reexamined the eleven companies' financial statements, *id.* at 5, with an eye to the "statutory preference for both home market and

---

[8] Mid Continent also supports Commerce's remand results.  Mid Continent's Resp. to Cmts. at 1.  Its arguments largely echo those of the government, emphasizing that there is not conclusive evidence of a subsidy received by Hitech and that the other financial statements are unusable.  *See id.* at 1–4.

comparability in merchandise," *id.* at 6. Based on these statutory preferences, the Government contends, Commerce found that Hitech's financial data best reflected the profit of a company like Oman Fasteners. *See id.* at 10. The Government further argues that while there is a suggestion of a subsidy in Hitech's financial statements, there is no amount reported, allowing Commerce to find that "Hitech's financial statements are the best source on the record to calculate the constructed value profit ratio." *Id.* at 6. The Government also contends that Commerce properly enforced its regulations and deadlines when it declined to rely on LSI's partially translated financial statements and rejected LSI's untimely fully translated financial statements. *Id.* at 12–15. Lastly, the Government notes that the decision to reopen the record lies entirely within Commerce's discretion, and there is no basis to require Commerce to reopen the record in this case. *See id.* at 15–16.

II. **Commerce Failed to Justify its Reliance on Hitech's Financial Statements for Constructed Value Profit**

In the Second Remand Results, Commerce failed to justify its reliance on Hitech's financial statements to determine constructed value profit. In particular, Commerce did not explain why this case is distinguishable from a case in which Hitech's financial statements were disregarded due to evidence of a countervailable subsidy. Commerce also did not explain why, given its finding that the potential subsidies could not be quantified, Hitech's financial statements were a better choice than Sundram's.

First, Commerce did not adequately distinguish this case from a case in which Hitech's financial statements were found to be unsuitable because they contained evidence of a subsidy. *See* Second Remand Results at 5–6 (merely noting that each

determination stands on its own record). Hitech's financial statements were previously disregarded in a separate, non-market economy proceeding, *Steel Wire Garment Hangers From China*, due to potential evidence of subsidies. *See Pl.*'s Opp'n Cmts. at 12. As the Federal Circuit explained, Commerce's reliance on the distinction between market-economy and nonmarket-economy cases is inadequate, by itself, to support the agency's disparate treatment of Hitech's financial statements. *Mid Continent III*, 941 F.3d at 544. In the Second Remand Results, however, Commerce failed to explain why this case differs from *Steel Wire Garment Hangers From China*. *See* Second Remand Results at 5–6.

Commerce's sole justification for distinguishing this case from *Steel Wire Garment Hangers From China* is that "the record of each case stands on its own." *Id.* at 5. This assertion, however, does not explain or identify any difference between the two cases that would lead to such different treatment. In support of its assertion that it need not consider the subsidy, Commerce stated that, "in this case[,] . . . the financial statements of Hitech do not report an amount associated with the potential subsidy" and "the respondent [does not] cite to any in its remand comments." *Id.* Commerce did not find that any evidence of a subsidy was so insignificant as to permit the evidence to be completely ignored; instead, Commerce found only that the subsidy is not quantifiable. *See id.* at 5, 13. Thus, Commerce's decision to ignore the potential subsidy is unsupported by substantial evidence.

Second, the Federal Circuit acknowledged that Commerce may need to engage in a comparative analysis of the deficiencies of multiple financial statements. *See Mid Continent III*, 941 F.3d at 544 ("The size of any subsidies would obviously be relevant,

as would the comparative deficiencies of the alternative sources."). In fact, Commerce does appear to have engaged in a limited comparison between the Hitech and Sundram financial statements; however, even that comparative analysis is largely conclusory. *See* Second Remand Results at 4. Commerce found that Sundram produces "some comparable merchandise," but "a large portion of its production consists of various automobile parts that are not comparable to nails." *Id.* (citations omitted). Commerce went on to conclude that because Sundram produces mostly auto parts, Sundram's financial statements are less appropriate as a substitute than Hitech's financial statements, given that Hitech produces fasteners. *See id.*

While that comparison took account of the differing production foci of the two companies, and also identified a concern about the impact of the non-comparable production on the profit ratio, Commerce ignored the possible deficiencies in Hitech's financial data—namely, the unknown impact of possible subsidies on Hitech's profit ratio. *See id.* at 4–5. As the Federal Circuit noted, however, the quantity of the potential subsidy is an important consideration because "Hitech would be a weaker surrogate for constructed value if government subsidies heavily distort its profits." *Mid Continent III*, 941 F.3d at 544. The Federal Circuit also suggested that "Commerce might determine the amount of subsidies and adjust its calculation of constructed value downward to eliminate the effect of the subsidies." *Id.* Commerce, however, found that "there is no evidence on the record for the amount of the subsidy with which to adjust [constructed value] profit." Second Remand Results at 13.

While the finding that Hitech's subsidies are not quantifiable and therefore cannot be offset may be reasonable,[9] this finding fails to address how Commerce could make a determination that Hitech's financial statements are more suitable for use than Sundram's when the problems with Hitech's financial statements cannot be quantified. In other words, Commerce failed to explain why Sundram's non-comparable merchandise was a more significant issue than Hitech's unquantifiable evidence of subsidies. Accordingly, Commerce's reasoning regarding the superiority of Hitech's statements was not supported by substantial evidence.[10]

Because Commerce failed to explain the difference between this case and *Steel Wire Hangers From China*, where Hitech's financial statements were disregarded because of evidence of subsidies, and also failed to explain how Hitech's financial

---

[9] Commerce acknowledged its practice of making adjustments to general and administrative expenses to eliminate subsidy values from its calculations in market economy cases. Second Remand Results at 6–7, 13. Commerce went on to find that, because there is no evidence regarding the amount of any subsidy, it cannot make similar adjustments to Hitech's financial statements. *Id.* at 13.

  While it may be reasonable for Commerce to find that it cannot adjust Hitech's financial statements to address any potential subsidies, Oman Fasteners correctly distinguishes those market-economy cases from the present situation. *See* Pl.'s Opp'n Cmts. at 10. In each cited case, Commerce was adjusting the respondent's own financial statements to take account of subsidies received by that respondent. *See id.* In such cases, Commerce had the benefit of being able to obtain substantially more information from the respondent than from a third-country substitute company. In substitute cases such as this one, Commerce must "make do with publicly available information regarding [substitutes] proffered by the parties," as highlighted by Oman Fasteners. *Id.* at 10. Thus, Commerce should reconsider and further address the relevance of any potential adjustment to Hitech's financial statements on remand.

[10] The court also notes that Commerce provided no reasoning as to why it limited its comparative analysis to Hitech and Sundram. While Commerce had rejected other potential financial statements earlier in its analysis, Commerce did not directly consider whether the deficiencies of those financial statements were more or less significant than the deficiencies of Hitech's financial statements. While there may be circumstances in which Commerce may conduct such an iterative analysis, Commerce has not acknowledged or justified such an approach in this case.

statements are more suitable than Sundram's given the unquantifiable nature of Hitech's potential subsidies, Commerce's findings are not supported by substantial evidence and are not in accordance with law.

## CONCLUSION

On the basis of the above analysis, the court remands Commerce's Second Remand Results for reconsideration and further explanation of the choice of Hitech's financial statements for determining constructed value profit, consistent with this opinion and that of the Federal Circuit in *Mid Continent III*, 941 F.3d 530.

To the extent that Commerce wishes to rely on Hitech's financial statements, the agency must seriously engage with the possible inclusion of subsidies in those statements. Specifically, Commerce must address why the above quoted language in the financial statements is sufficient to be considered "evidence of a subsidy" in *Steel Wire Garment Hangers From China* yet may be ignored in this case. If Commerce accepts that the statement raises a suspicion of subsidization in this case, Commerce must explain why it is reasonable nevertheless to disregard that suspicion here and continue to rely on Hitech's financial statements. If Commerce reconsiders its comparative analysis between Hitech's and Sundram's financial statements, it must address whether and, if so, why, the financial statements with a potential subsidy is preferable to one with a limited percentage of comparable merchandise production, given that both would seem to be impacted by factors not related to the production and sale of comparable merchandise. Commerce must also address whether a comparative analysis inclusive of the other financial statements on the record is appropriate.

To be clear, the court does not seek to impose a particular result on Commerce; however, a serious analysis of any deficiencies in the various data sources before the agency is required before Commerce's conclusions may be sustained. Should Commerce find that Hitech's financial statements contain deficiencies requiring the agency to engage in a more expansive comparative analysis of its potential data sources, the agency may reconsider any such data source on the record. Similarly, while the agency is not required to reopen the record, such a decision is within the agency's discretion if it determines that reopening would provide the most reasonable path forward.

## ORDER

In accordance with the foregoing, it is hereby

**ORDERED** that Commerce's Second Remand Results are remanded for further reconsideration and explanation consistent with this opinion and that of the Federal Circuit in *Mid Continent III*, 941 F.3d 530; it is further

**ORDERED** that Commerce shall file its remand redetermination on or before March 22, 2022; it is further

**ORDERED** that subsequent proceedings shall be governed by USCIT Rule 56.2(h); and it is further

**ORDERED** that any comments or responsive comments must not exceed 4,000 words.

/s/      Mark A. Barnett
Mark A. Barnett, Chief Judge

Dated: December 22, 2021
         New York, New York