UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

| | |
|---|---|
| MID CONTINENT STEEL & WIRE, INC., | ) |
| Plaintiff/Consolidated Defendant-Intervenor, | ) ) ) ) |
| v. | ) |
| UNITED STATES, | ) Consol. Court No. 15-00214 ) |
| Defendant, | ) PUBLIC DOCUMENT ) |
| and | ) ) |
| OMAN FASTENERS, LLC, | ) ) |
| Defendant-Intervenor/ Consolidated Plaintiff. | ) ) ) |

COMMENTS OF PLAINTIFF/CONSOLIDATED DEFENDANT-INTERVENOR
MID CONTINENT STEEL & WIRE, INC. ON FINAL REMAND DETERMINATION

Adam H. Gordon
Jennifer M. Smith
Lauren Fraid
**THE BRISTOL GROUP PLLC**
1707 L Street, NW, Suite 570
Washington, DC 20036
202-991-2701
*Counsel to Mid Continent Steel & Wire, Inc.*

Dated: June 13, 2022

I.   **INTRODUCTION**

On behalf of Plaintiff/Consolidated Defendant-Intervenor Mid Continent Steel & Wire, Inc. ("Mid Continent"), we hereby submit these comments on the *Final Remand Results* issued by the Department of Commerce ("Commerce") on April 12, 2022 (CM/ECF Doc. No. 150).[1] These comments are timely submitted pursuant to the Court's Order of March 11, 2022 (CM/ECF Doc. No. 149).

II.  **DISCUSSION**

As an initial matter, Mid Continent supports Commerce's determination to continue to decline to use Oman Fasteners LLC's ("OF") financial statements to calculate OF's constructed value ("CV") profit and indirect selling expenses ("ISE") ratios because OF's volume of home market sales is not meaningfully significant.[2] Mid Continent also supports Commerce's determination to continue to decline to use the financial statements of the six Omani companies on the record because none of them produced steel nails or any type of comparable merchandise.[3] In addition, Mid Continent supports Commerce's determination to continue to decline to use the financial statements of two Taiwanese companies, because they are not fully translated.[4] These aspects of Commerce's determination have been previously affirmed by the U.S. Court of Appeals for the Federal Circuit ("CAFC").[5]

---

[1] *Mid Continent Steel & Wire, Inc. v. United States*, Consol. Court No. 15-00214, Slip Op. 21-172 (CIT December 22, 2021), *Certain Steel Nails from the Sultanate of Oman, Final Results of Redetermination Pursuant to Court Remand* (Apr. 12, 2022) ("Final Remand Results").

[2] *See id.* at 4.

[3] *See id.* at 4-5.

[4] *See id.* at 5.

[5] *See Mid Continent Steel & Wire, Inc. v. United States*, 941 F. 3d 530, 538-543 (Fed. Cir. 2019).

1

Next, Mid Continent supports Commerce's determination to use the financial statements of Sundram Fasteners Limited ("Sundram") instead of the financial statements of Hitech Fastener Manufacturer (Thailand) Co., Ltd. ("Hitech") to calculate OF's CV profit and ISE ratios.[6] Commerce reasonably determined that Sundram's financial statements are superior to Hitech's. Although both companies' financial statements contain evidence of subsidies,[7] they are the best sources for calculating CV profit and ISE ratios because the record does not contain financial statements of any other companies engaged in the production and sale of comparable merchandise.[8] Based on the framework established in *Pure Magnesium from Israel*[9] and *CTVs from Malaysia*[10] to evaluate financial statements for the purpose of calculating CV profit and ISE ratios, Commerce reasonably determined that: (1) both Sundram and Hitech produce comparable merchandise; thus, their production experiences, raw materials consumption, profit experiences, and customer bases are similar to OF's;[11] and (2) Hitech's financial statements are not contemporaneous with the period of investigation ("POI," *i.e.*, April 1, 2013 through March 31, 2014) since they cover the calendar year 2012, which ended four months before the POI began, while Sundram's financial statements correspond with the POI exactly.[12] Therefore, on balance,

---

[6] *See* Final Remand Results at 2.

[7] *See id.* at 6-7.

[8] *See id.* at 7.

[9] *See id.* (citing *Notice of Final Determination of Sales at Less than Fair Value: Pure Magnesium from Israel*, 66 Fed. Reg. 49,349 (Dep't Comm. Sept. 27, 2001) ("*Pure Magnesium from Israel*"), and accompanying IDM at Comment 8).

[10] *See id.* (citing *Notice of Final Determination of Sales at Not Less Than Fair Value: Certain Color Television Receivers from Malaysia*, 69 Fed. Reg. 20,592 (Dep't Comm. Apr. 16, 2004) ("*CTVs from Malaysia*"), and accompanying IDM at Comment 26).

[11] *See id.* at 8.

[12] *See id.* at 9.

Commerce reasonably determined that Sundram's financial statements are the only contemporaneous financial statements on the record that reflect production, sale, and profit from the sale of comparable merchandise, and are the best source for calculating OF's CV profit and ISE ratios.[13]

OF argues that Commerce failed to engage in a comparative analysis of the deficiencies of various financial statements on the record and determine which one of them is the least flawed: (1) Sundram's or Hitech's financial statements with evidence of countervailable subsidies; (2) partially translated L.S. Industry Co., Ltd.'s ("LSI") financial statements; (3) fabricated steel (*i.e.*, noncomparable merchandise) producer Al Jazeera Steel Products Co.'s ("Al Jazeera") financial statements.[14] However, as detailed above, Commerce reasonably explained why LSI's and Al Jazeera's financial statements are unsuitable for calculating CV profit and ISE ratios. In addition, the CAFC has already affirmed Commerce's rejection of LSI's and Al Jazeera's financial statements,[15] and the Court should reject OF's strenuous attempt to relitigate these issues.

OF cites to *CP Kelco I* to support its position that Commerce should determine that the partially translated LSI's financial statements are superior to Sundram's financial statements.[16] However, OF fails to mention a crucial distinguishing factor: the partially translated Thai Fermentation's financial statements at issue in *CP Kelco I* only was missing translations of two

---

[13] *See id.* at 9-10.

[14] *See* OF Opposition Comments at 6-9.

[15] *See Mid Continent*, 941 F. 3d at 538-543.

[16] *See* OF Opposition Comments at 7-8 (citing *CP Kelco US Inc. vs. United States*, Slip Op. 15-27, 2015 WL 1544714 (CIT Mar. 31, 2015) (not reported in F.Supp.3d) at 13) ("*CP Kelco I*").

paragraphs in one footnote (concerning property, plant, and equipment, *i.e.*, fixed assets).[17]  In contrast, here, LSI's financial statements are nearly entirely untranslated: most of the pages are wholly untranslated, and only one of what appears to be 23 individually enumerated notes to the financial statements is translated.[18]  Commerce therefore reasonably concluded in its *Final Remand Results* that:

> Following our analysis from the First Redetermination in this proceeding, the LSI and two Taiwanese FS are incomplete, *i.e.*, missing an auditor's report and the majority of their data disclosures under their countries' respective generally accepted accounting principles (GAAP).  Without the auditor's report and data disclosures, there is no way to ascertain whether the companies have properly captured their revenues and costs (and thereby their profits) in accordance with their respective GAAP or whether the FS can serve as reliable sources for the profit "normally" experienced by a producer of steel nails.  Our analysis of the three FS is reasonable given the CAFC has upheld our rejection of the Taiwanese FS and LSI's FS.  In the instant case, we find that the Taiwanese FS and LSI's FS contain significant defects which prevent Commerce from effectively evaluating their appropriateness as sources for CV profit and ISE information.  Therefore, we find that the LSI and both Taiwanese FS are less preferable than Sundram's FS because Sundram's FS include all of the information necessary to calculate accurate and reliable financial ratios.[19]

In any event, in the series of *CP Kelco* cases, during multiple remands from the CIT, Commerce continued to reject one company's (Thai Fermentation) financial statements for a lack of complete translation and continued to select another company's (Thai Ajinomoto) financial statements to calculate surrogate financial ratios even though it had received countervailable

---

[17] *CP Kelco I*, 2015 WL 1544714 at *5; *see also*, *CP Kelco US Inc. vs. United States*, Slip Op. 18-36, 2018 WL 1703143 at *2 (CIT Apr. 5, 2018) (not reported in Fed. Supp.) ("CP Kelco IV").

[18] *See Petitioner's Response to Oman Fasteners' Request to Permit New Factual Information Relating to Constructed Value Profit and Selling Expenses* at 4 (Feb. 20, 2015) (PR 180).

[19] Final Remand Results at 14-15 (citations omitted).

subsidies.[20] Commerce advanced several explanations as to why Thai Fermentation's incompletely translated financial statements were unusable in comparison with Thai Ajinomoto's financial statements.[21] The CIT rejected the agency's explanations each time and remanded the case repeatedly, until finally in 2018, the CIT ordered Commerce to use Thai Fermentation's financial statements.[22] Commerce did so on remand, and the CIT affirmed.[23]

The case was then appealed to the CAFC. The CAFC ruled that Commerce provided sufficient explanation for rejecting Thai Fermentation's incompletely translated financial statements in its third remand results, and reversed the CIT's decision in this aspect.[24] On remand, the CIT followed the CAFC's decision and reinstated Commerce's third remand results, which relied on the Thai Ajinomoto financial statement s showing some evidence of subsidies.[25] Therefore, ultimately, the series of *CP Kelco* cases do not support OF's position that LSI's largely untranslated financial statements are superior to Sundram's financial statement with evidence of subsidies.

Moreover, notwithstanding the fact that the Federal Circuit has already upheld Commerce's decision not to rely on LSI's financial statements as a source for CV profit, OF continues to advocate for their use. OF states that:

---

[20] *See CP Kelco I*; *CP Kelco US Inc. vs. United States*, Slip Op. 16-36, 2016 WL 1403657 (CIT Apr. 8, 2016) (not reported in Fed. Supp.) ("*CP Kelco II*"); *CP Kelco US Inc. vs. United States*, 211 F. Supp. 3d 1338 (CIT 2017) ("*CP Kelco III*").

[21] *See id.*

[22] *See CP Kelco IV*.

[23] *CP Kelco US Inc. vs. United States*, Slip Op. 18-120, 2018 WL 4469912 (CIT Sep. 17, 2018) (not reported in Fed. Supp.) ("*CP Kelco V*").

[24] *See CP Kelco US Inc. vs. United States*, 949 F.3d 1348, 1359 (Fed. Cir. 2020) ("*CP Kelco VI*").

[25] *See CP Kelco US Inc. vs. United States*, Slip Op. 20-62, 2020 WL 2315251 (CIT May 8, 2020) (not reported in Fed. Supp.) ("*CP Kelco VII*").

5

> LSI is the only surrogate on the record that produces identical merchandise to Oman Fasteners, steel nails, the subject merchandise at issue in this case. Commerce specifically selected the identical partially translated LSI financial statement in the fourth review of China Nails, finding it preferable to the financial statement of Hitech, which, in addition to being distorted by subsidies, reflected the production and sale of merely comparable merchandise. *Certain Steel Nails from China*, 79 Fed. Reg. 19,316 (April 8, 2014) (final results), Issues and Decisions Memorandum ("IDM") at Comment 2.[26]

OF's reliance on *China Nails AR4* is unavailing. Commerce and Mid Continent have previously pointed out the numerous flaws with respect to LSI's financial statements. It bears mentioning again that LSI's financial statements are for 2012, and thus, like Hitech's, are not contemporaneous with the underlying POI. Moreover, the version of LSI's financial statement that OF placed on the record of the underlying investigation here, and which is nearly entirely untranslated, was from the fifth administrative review (*i.e.*, the POR of August 1, 2012, through July 31, 2013) of the China nails case. What OF fails to mention is that in that fifth administrative review, another party timely placed a fully translated version of the 2012 LSI financial statements on the record, obviating the need for Commerce to rely on the grossly under-translated version that was originally submitted, and whose use OF urges. Whatever may have happened in *China Nails AR4* is thus not reflected in the record of the underlying investigation at issue here, and indeed, the IDM for *China Nails AR4* makes no mention that any party, or Commerce, raised an issue with the translation status of LSI's financial statements in that particular segment.

Furthermore, Mid Continent recognizes the Federal Circuit's concern, as emphasized by OF, that the

> distortive effect of a subsidy on a company's profits may be sufficiently large "that Commerce would no longer have a sound reason to choose

---

[26] *See* OF Opposition Comments at 10.

>Hitech {(or Sundram)} over another proposed source of profit information, whether from OF's home country or elsewhere. The size of any subsidies would obviously be relevant, as would the comparative deficiencies of the alternative sources."[27]

If the size of the subsidy is relevant, then an examination of Sundram's financial statements should assuage any concern that this court, the Federal Circuit, or for that matter, OF, might have.

Specifically, the subsidy amount at issue in Sundram's financial statements is Rs. 30 lakhs.[28] A lakh is one hundred thousand rupees, so in plain numerical terms, the subsidy amount was 3,000,000 rupees, or roughly $48,663.[29] To put that into perspective, Sundram's total revenue for FY 13-14 was Rs. 207,099.56 lakhs, or 20,709,956,000 rupees, or $335,936,196.28.[30] Thus, the subsidy was equivalent to 0.0145 percent of Sundram's turnover for the fiscal year – just over one hundredth of one percent.

Additionally, the company's financial statements say that:

>Lump sum capital subsidies, not relating to any specific fixed asset, received from state governments for setting up new projects are accounted as capital reserve. During the year, the Company has received Rs 30 lakhs from state government of Uttarakhand as special capital subsidy, for

---

[27] See OF Opposition Comments at 7, citing *Mid Continent Steel & Wire, Inc. v. United States*, 941 F.3d 530, 544 (Fed. Cir. 2019).

[28] See Letter from Picard Kentz & Rowe to Sec'y of Commerce, *Certain Steel Nails from the Sultanate of Oman: Submission of New Factual Information on Constructed Value Profit and Selling Expenses* (Oct. 31, 2014) at Exhibit 10A (Page 33 of Sundram's Annual Report) (PR 102-109) ("Mid Continent CV Profit Filing").

[29] The U.S. dollar equivalent amounts here were calculated using Commerce's exchange rate dataset for India available at https://access.trade.gov/resources/exchange/india.txt. To convert the rupee amounts to U.S. dollars, we used the exchange rate as of March 31, 2014, the last day of Sundram's relevant fiscal year.

[30] See Mid Continent CV Profit Filing at Exhibit 10A (Pages 31 and 33 of Sundram's Annual Report).

7

setting up an industrial undertaking in the state. The capital subsidy received has been credited to capital reserve.[31]

So, in that respect, it may also be appropriate to examine the subsidy's impact/importance to Sundram's total reserves and surplus. Sundram's total reserves and surplus were Rs. 75,463.00 lakhs, or 7,546,300,000.00 rupees, or $122,408,532.30.[32] Viewed in this manner, the subsidy was equivalent to 0.0398 percent of Sundram's overall capital reserves/surplus for the fiscal year. As a final illustration of how negligible the subsidy was to Sundram's financial experience, Sundram's profit for the fiscal year used in the financial ratio calculations was Rs. 15,709.82 lakhs, or 1,570,982,000.00 rupees, or $25,482,899.02.[33] Thus, the subsidy amount represented just 0.19 percent – less than two-tenths of one percent – of Sundram's profit, a negligible amount that would have no bearing on whether or not was Sundram was profitable for the period in question.

In sum, and by any reasonable metric, the record evidence clearly indicates that the subsidy in question had a negligible effect on Sundram's financial experience for its fiscal year and would not have affected whether the company was profitable or not. Indeed, viewed in this light, the presence of the subsidy in Sundram's statement pales in comparison to the serious and immutable flaws present in the other options, all of which Commerce and/or Mid Continent have detailed in earlier stages of this litigation, and in the most recent remand redetermination.

### III.   CONCLUSION

For the reasons discussed above, Mid Continent fully supports Commerce's determination to use Sundram's financial statements to calculate OF's CV profit and ISE ratios,

---

[31] *See id*. at Exhibit 10A (Page 51 of Sundram's Annual Report).

[32] *See id*. at Exhibit 10A (Page 35 of Sundram's Annual Report).

[33] *See id*. at Exhibit 10B.

which results in a revised weighted average dumping margin of 4.22 percent for OF.[34]

Commerce has provided adequate explanations for why its determination is reasonable, and its *Final Remand Results* should be affirmed.

*     *     *

Please contact the undersigned with any questions that arise concerning this submission.

Respectfully submitted,

*/s/ Adam H. Gordon*
Adam H. Gordon
Jennifer M. Smith
Lauren Fraid
**THE BRISTOL GROUP PLLC**
1707 L Street, NW
Suite 570
Washington, DC 20036
*Counsel to Mid Continent Steel & Wire, Inc.*

Dated: June 13, 2022

---

[34] *See* Final Remand Results at 20.

**CERTIFICATE OF COMPLIANCE**

Pursuant to Chamber Procedure 2(B)(1) and the Court's March 11, 2022 Order (CM/ECF Doc. No. 149), the undersigned certifies that these comments comply with the word limitation requirement. The word count for Plaintiff/Consolidated Defendant-Intervenor Mid Continent Steel & Wire, Inc.'s Comments on Final Remand Determination, as computed by The Bristol Group PLLC's word processing system Microsoft Word for Microsoft 365, is 2,488 words, less than the 4,000 word limit.

/s/ Adam H. Gordon
Adam H. Gordon
**THE BRISTOL GROUP PLLC**
*Counsel to Mid Continent Steel & Wire, Inc.*

Dated: June 13, 2022

## CERTIFICATE OF SERVICE

I hereby certify that on the 13th day of June, 2022, I electronically filed a copy of the foregoing using the CM/ECF system, which sent a notification of such filing to counsel of record.

                                                */s/ Adam H. Gordon*
                                                Adam H. Gordon
                                                **THE BRISTOL GROUP PLLC**
                                                *Counsel to Mid Continent Steel & Wire, Inc.*

Dated: June 13, 2022