UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

| | |
|---|---|
| _____ ) | |
| MID CONTINENT STEEL & WIRE, INC., ) | |
| ) | |
|       Plaintiff/Consolidated ) | |
|       Defendant Intervenor, ) | |
| ) | |
|    v. ) | Consol. Court No. 15-00214 |
| ) | |
| UNITED STATES, ) | |
| ) | |
|       Defendant, ) | |
| ) | |
| and ) | |
| ) | |
| OMAN FASTENERS, LLC, ) | |
| ) | |
|       Defendant-Intervenor/ ) | |
|       Consolidated Plaintiff. ) | |
| _____ ) | |

## <u>DEFENDANT'S RESPONSE TO COMMENTS ON REMAND REDETERMINATION</u>

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. MCCARTHY
Director

OF COUNSEL:
Ian McInerney
Attorney
U.S. Department of Commerce
Office of the Chief Counsel
For Trade Enforcement and Compliance
1401 Constitution Avenue, NW
Washington, D.C. 20230
Tel: (202) 482-4378
Email:  Ian.McInerney@trade.gov

MIKKI COTTET
Senior Trial Counsel
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 480
Ben Franklin Station
Washington D.C. 20044
Tel: (202) 307-0962
Fax: (202) 514-7965
Email: Mikki.Cottet@usdoj.gov

June 13, 2022

## <u>TABLE OF CONTENTS</u>

BACKGROUND ..................................................................................................................2

SUMMARY OF ARGUMENT ............................................................................................5

ARGUMENT .......................................................................................................................5

I.      Standard Of Review ................................................................................................5

II.     Commerce's Determination To Rely On Sundram's Financial Statements To
        Calculate Constructed Value Profit Ratio Is Reasonable ......................................5

CONCLUSION...................................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                        **Page(s)**

*CP Kelco US, Inc. v. United States*,
  2015 WL 1544714 (Ct. Int'l Trade 2015)................................................................ 11, 12

*CP Kelco US, Inc. v. United States*,
  211 F. Supp. 3d 1338 (Ct. Int'l Trade 2017),
  *aff'd in part and rev'd in part*, 949 F.3d 1348 (Fed. Cir. 2020) ........................................ 11, 12

*Dupont Teijin Films v. United States*,
  997 F. Supp. 2d 1338 (Ct. Int'l Trade 2014) ................................................................. 9

*Essar Steel Ltd. v. United States*,
  678 F.3d 1268 (Fed. Cir. 2012)............................................................................... 14

*M S International, Inc. v. United States*,
  547 F.Supp.3d 1254 (Ct. Int'l Trade 2021) ................................................................. 10

*MacLean-Fogg Co. v. United States*,
  100 F. Supp. 3d 1349 (Ct. Int'l Trade 2015) ................................................................ 5

*Mid Continent Steel & Wire, Inc. v. United States*,
  203 F. Supp. 3d 1295 (Ct. Int'l Trade 2017) ......................................................... 2, 3, 12

*Mid Continent Steel & Wire, Inc. v. United States*,
  273 F. Supp. 3d 1348 (Ct. Int'l Trade 2017) ................................................................ 3

*Mid Continent Steel & Wire, Inc. v. United States*,
  941 F.3d 530 (Fed. Cir. 2019)......................................................................... passim

*Mid Continent Steel & Wire Inc. v. United States*,
  551 F. Supp. 3d 1360 (Ct. Int'l Trade 2021) ............................................................. 1, 5

*QVD Food Co. v. United States*,
  658 F.3d 1318 (Fed. Cir. 2011).............................................................................. 13

*United States v. Eurodif S.A.*,
  555 U.S. 305 (2009)......................................................................................... 5

**Statutes**

19 U.S.C. § 1677.......................................................................................... passim

**Other Authorities**

*Certain Steel Nails from the Sultanate of Oman*,
    80 Fed. Reg. 28,972 (Dep't of Commerce May 20, 2015) ..........................................................2

*Hangers from the People's Republic of China: Preliminary Results of Antidumping Duty
Administrative Review; 2012-2013*,
    79 Fed. Reg. 65,616 (Dep't Commerce Nov. 5, 2014)................................................................8

*Notice of Final Determination of Sales at Less than Fair Value: Pure
Magnesium from Israel*,
    66 Fed. Reg. 49,349 (Dep't Commerce Sept. 27, 2001)....................................................6, 9, 10

*Notice of Final Determination of Sales at Not Less Than Fair Value: Certain
Color Television Receivers from Malaysia*,
    69 Fed. Reg. 20,592 (Dep't Commerce Apr. 16, 2004)....................................................6, 9, 10

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

| | |
|---|---|
| _____ ) | |
| MID CONTINENT STEEL & WIRE, INC.,    ) | |
| ) | |
| Plaintiff/Consolidated    ) | |
| Defendant Intervenor,    ) | |
| ) | |
| v.    ) | Consol. Court No. 15-00214 |
| ) | |
| UNITED STATES,    ) | |
| ) | |
| Defendant,    ) | |
| ) | |
| and    ) | |
| ) | |
| OMAN FASTENERS, LLC,    ) | |
| ) | |
| Defendant-Intervenor/    ) | |
| Consolidated Plaintiff.    ) | |
| _____ ) | |

## DEFENDANT'S RESPONSE TO COMMENTS ON REMAND REDETERMINATION

Defendant, the United States, respectfully submits this response to the comments filed by

Defendant-Intervenor/Consolidated Plaintiff, Oman Fasteners, LLC, ECF No. 153 (Oman

Fasteners's Cmts.), on the final remand redetermination issued by the Department of Commerce

(Commerce) pursuant to *Mid Continent Steel & Wire, Inc. v. United States*, 941 F.3d 530 (Fed.

Cir. 2019) (*Mid Continent III*), and *Mid Continent Steel & Wire Inc. v. United States*, 551 F.

Supp. 3d 1360 (Ct. Int'l Trade 2021) (*Mid Continent IV* or Remand Order), remanding a portion

of Commerce's second remand redetermination to Commerce for further explanation.  *See* Final

Results of Redetermination Pursuant to Court Order, dated March 31, 2020, ECF No. 150-1

(Third Remand Redetermination).

BACKGROUND

In 2015, Commerce issued a final determination in its antidumping duty investigation of certain steel nails from the Sultanate of Oman (Oman), finding that certain steel nails were being sold at less than fair value in the United States. *See Certain Steel Nails from the Sultanate of Oman*, 80 Fed. Reg. 28,972 (Dep't of Commerce May 20, 2015) (final determination of sales at less than fair value) (Final Determination) and the accompanying Issues and Decision Memorandum. During the investigation, Commerce examined Oman Fasteners's sales and calculated a weighted-average dumping margin of 9.10 percent. As part of its final determination, Commerce calculated Oman Fasteners's constructed value profit rate using data sources other than Oman Fasteners's home market sales, ultimately using the financial statement of Hitech Fastener Manufacture (Thailand) Co., Ltd. (Hitech), a Thai producer of screws, under 19 U.S.C. § 1677b(e)(2)(B)(iii). Commerce determined that Hitech's steel screws were comparable to and within the same general category of products (fasteners) as Oman Fasteners's steel nails and declined to rely on the financial statements of Omani companies that sold steel products for various industries: civil construction, power transmission, mining, oil and gas, and packaging. Finally, Commerce determined that, although it was relying on section 1677b(e)(2)(B)(iii) to calculate constructed value profit, it was "unable to calculate the profit normally realized by producers other than Oman Fasteners in connection with domestic market sales of merchandise in the same general category as the subject merchandise," and, therefore, did not calculate a profit cap. *Id.* at 19.

On January 26, 2017, the Court held that Commerce had "failed to explain" why it had "departed from its prior practice" of "rely{ing} on home-market data rather than third-country data to calculate {constructed value} profit." *Mid Continent Steel & Wire, Inc. v. United States*,

203 F. Supp. 3d 1295, 1310 (Ct. Int'l Trade 2017) (*Mid Continent I*).  Although the Court acknowledged that Commerce had explained that "the Omani companies did not produce identical or comparable merchandise" to steel nails, it found that this explanation was "{in}adequate."  *Id.*  Accordingly, the Court remanded the final determination for Commerce to, among other things, further explain or reconsider "why third-country data {of a producer} of comparable merchandise better represents Omani sales of steel nails than home-market sales data from Omani steel producers."  *Id.*

Commerce issued its first remand redetermination on May 18, 2017, and continued to rely on the third-country profit data of Hitech rather than home-market profit data.  Pursuant to the Court's instructions, Commerce provided further explanation as to why it had continued to determine that Hitech's financial statements were an appropriate source for constructed value profit.  On November 20, 2017, the Court affirmed Commerce's remand redetermination.  *See Mid Continent Steel & Wire, Inc. v. United States*, 273 F. Supp. 3d 1348 (Ct. Int'l Trade 2017) (*Mid Continent II*).  Oman Fasteners appealed the Court's judgment.

On October 17, 2019, the United States Court of Appeals for the Federal Circuit (Federal Circuit) affirmed a substantial part of this Court's judgment in *Mid Continent II*.  The Federal Circuit affirmed Commerce's use of the third alternative method for calculating constructed value profit.  *Mid Continent Steel III*, 941 F.3d at 538-40.  It held that Commerce had acted reasonably and in accordance with prior practice when it refused to use the partially translated financial statements of L.S. Industry Co., Ltd. (LSI) to calculate Oman Fasteners's constructed value profit rate.  It also affirmed Commerce's rejection of the untimely submission of the fully translated LSI financial statements.  *Id.* at 540-42.  The Federal Circuit also held that Commerce's use of third country data from Hitech, a Thai producer of steel screws, rather than

data from Omani companies that produced unrelated products when calculating constructed value profit rate was supported by substantial evidence and reasoned explanation. *Id.* at 542-43.

The Federal Circuit, however, vacated and remanded a portion of the Court's judgment "to secure further explanation from Commerce" about "Commerce's refusal to consider the effect of subsidies on whether the information it selected was accurate for the relevant statutory purpose." *Id.* at 534. Although it found Commerce's explanation for its refusal to consider the effect of government subsidies on Hitech's profits when calculating constructed value profit rate was insufficient, the Federal Circuit did "not decide {that} Commerce must reject Hitech or lower the profit figure to be borrowed for {Oman Fasteners.}" *Id.* at 544. The Federal Circuit emphasized that it was not "prescrib{ing} an ultimate result" but, whatever the result, required that Commerce "articulate an explanation of why its result is a reasonable one, given relevant statutory duties, including the broad duty to strive for accuracy." *Id.* at 545.

Thereafter, this Court remanded the action to Commerce for further consideration and explanation of the Hitech subsidy issue in accordance with the Federal Circuit's opinion. *See* Sched. Ord., dated Dec. 11, 2019, ECF No. 130. Pursuant to these instructions, Commerce released the second remand redetermination on March 31, 2020, in which it continued to rely on Hitech's financial statements. *See Final Results of Redetermination Pursuant to Court Order*, dated March 31, 2020, ECF No. 135-1 (Second Remand Redetermination), at 5. On December 22, 2021, the Court remanded the second remand redetermination to Commerce for further reconsideration and explanation of the choice of Hitech's financial statement for determination of constructed value profit and independent selling expenses, consistent with its opinion and that of the Federal Circuit.

<u>SUMMARY OF ARGUMENT</u>

The Court should sustain the third remand redetermination because Commerce complied with the Court's remand order in all respects, and Commerce's determination is supported by substantial evidence, is otherwise in accordance with law, and is reasonable.

<u>ARGUMENT</u>

I.      <u>Standard Of Review</u>

In remand proceedings, the Court will sustain Commerce's antidumping determinations if they are "in accordance with the remand order," and are "supported by substantial evidence, and are otherwise in accordance with law." *See MacLean-Fogg Co. v. United States*, 100 F. Supp. 3d 1349, 1355 (Ct. Int'l Trade 2015) (citing 19 U.S.C. § 1516a(b)(1)(B)(i)); *see also United States v. Eurodif S.A.*, 555 U.S. 305, 316 n.6 (2009).

II.     Commerce's Determination To Rely On Sundram's Financial Statements To Calculate
        <u>Constructed Value Profit Ratio Is Reasonable</u>

In its third remand redetermination, Commerce reconsidered its analysis of whether Hitech's financial statements are the best source for constructing profit, and concluded that they are not the best source on the record. Third Remand Redetermination at 9-10. Commerce provides a reasonable explanation for its calculation of constructed value profit using Sundram's financial statements, despite evidence of countervailable subsidies. Commerce complied with the directions provided in the remand order, which directed that Commerce reconsider its determination and provide a thorough explanation "of its reliance on Hitech's financial statement." *Mid Continent IV*, 551 F. Supp. 3d at 1361.

In particular, Commerce reasonably tied its determination to the governing statutory standard and to the record evidence by indicating what statutory interpretations the agency adopted and what facts the agency found. *See Mid Continent III*, 941 F.3d at 537 ("{T}he

required explanation must reasonably tie the determination under review to the governing statutory standard and to the record evidence by indicating what statutory interpretations the agency is adopting and what facts the agency is finding."). In this regard, Commerce addressed its preference to use financial statements of a producer of identical or comparable merchandise in the home market and its preference for financial statements that are contemporaneous with the period of review for calculation of constructed value profit under 19 U.S.C. § 1677b(e)(2)(B)(iii). Third Remand Redetermination at 7-10.

When evaluating financial statements for use in the constructed value profit calculation under section 1677b(e)(2)(B)(iii), Commerce explained that it "follow{s} the framework established in *Pure Magnesium from Israel* and *CTVs from Malaysia*." *Id.* at 7 (citing *Pure Magnesium from Israel*, 66 Fed. Reg. 49,349 (Dep't of Commerce Sept. 27, 2001) (final LTFV determin.) (*Pure Magnesium from Israel*), and accompanying Issues and Decisions Memorandum at cmt. 8 and *Certain Color Television Receivers from Malaysia*, 69 Fed. Reg. 20,592 (Dep't of Commerce Apr. 16, 2004) (final LTFV determin.) (*CTVs from Malaysia*), and accompanying Issues and Decisions Memorandum at cmt. 26). Utilizing this framework, Commerce considered (1) the similarity between a potential surrogate's business operations and products and those of the respondent; (2) the extent to which a potential surrogate has sales in the United States and the home market; (3) the contemporaneity of the surrogate data; and (4) the similarity of customer base between a potential surrogate and the respondent. *Id.* at 8.

Commerce freshly considered the potential sources for constructed value profit and indirect selling expenses on the record and made its factual findings after analyzing the financial statements of eleven companies that had been submitted by the parties. *Id.* at 4-10. Commerce first considered the financial statements of the six Omani companies on the record. Commerce

determined that none of the six Omani companies produce steel nails or any category of merchandise that is comparable to steel nails. *Id*. at 13.  Commerce explained that its preference is to rely on the respondent's home country profit information, but when that information is unavailable, its practice is to select the financial statement of a producer whose operations most closely reflect those of the respondent's.  *Id*.  Here, however, the six Omani companies' operations were disparate from Oman Fasteners's operations and, therefore, the financial statements were less than ideal.  *Id*.  The Federal Circuit has already concluded that Commerce's application of the statute was permissible and its explanation for eliminating the financial statements of the Omani companies was supported by substantial evidence.  *See Mid Continent III*, 941 F.3d at 543.

Commerce next considered the financial statements from two Taiwanese companies and LSI.  Commerce declined to rely upon these financial statements because they were partially translated and contain "significant defects which prevent Commerce from effectively evaluating their appropriateness as sources for CV profit and {indirect selling expense} information" and which render them inferior to other financial statements on the record.  Third Remand Redetermination at 14-15.  As noted above, the Federal Circuit affirmed Commerce's determination to reject partially translated financial statements in this case.  *See Mid Continent III*, 941 F.3d at 540-41.

Finally, Commerce then reconsidered the remaining two companies, Hitech and Sundram, each of which produce merchandise that is comparable to steel nails and reflect Oman Fasteners's production experience better than the six Omani companies that do not produce comparable merchandise.  *See* P.R. 105; P.R. 107; P.R. 104.[1]  In the Second Remand

---

[1]  "P.R." refers to the public records in the underlying investigation.

Redetermination, Commerce had analyzed Hitech's potential receipt of subsidies from the Thai government during the period of investigation and acknowledged that Commerce has countervailed this program in other cases, but concluded that Hitech's financial statement did not contain conclusive evidence of a subsidy.  Second Remand Redetermination at 5-7.  However, Commerce reconsidered certain aspects of Hitech's financial statement, particularly the following line-item:  "The company has been support {sic} for production screws (SCREW) Category 4.7 Manufacture of wire products, metal wire, Promotional Number 1447/2538 on July 10, 1995."  *See* Third Remand Redetermination at 6.  Commerce explained that while Hitech's financial statement does not report an amount associated with the subsidy, the identification of the program in the statement and the fact that Commerce found that this exact line-item was countervailed in *Steel Wire Garment Hangers from China* demonstrated receipt of a subsidy.  *Id*. at 6 (citing *Steel Wire Garment Hangers from the People's Republic of China*, 79 Fed. Reg. 65,616 (Dep't of Commerce Nov. 5, 2014) (prelim. admin. review), and accompanying Preliminary Decision Memorandum at 26 (*Steel Wire Garment Hangers from China*).  *Id*.  While the record of each proceeding stands on its own, Commerce determined that the facts of this case are indistinguishable from the facts in *Steel Wire Garment Hangers from China* and, therefore, Commerce concluded here that Hitech's financial statement contains evidence of subsidies.  *Id*.

The only remaining company on the record of this investigation, Sundram, also received subsidies during the fiscal period.  *Id*. at 6-7.  Sundram's cash flow statement in its financial statement shows receipt of 30 Lakhs during the 2013-2014 period from the "state government of

Uttarakhand as special capital subsidy, for setting up an industrial undertaking in the state." CV Profit & Selling Expenses Info, Part 5 at Ex. 10A (PDF p. 130) (P.R. 104).

With both Hitech's and Sundram's financial statements containing subsidies, Commerce concluded that these statements were equal with regard to subsidies and, following the framework established in *Pure Magnesium from Israel* and *CTVs from Malaysia*, continued with its comparative analysis to determine the appropriate source for constructed value profit and independent selling expenses. Third Remand Redetermination at 6-7. Commerce concluded that it was unable to consider the second criterion, *i.e.*, the extent to which a potential surrogate has sales in the United States and the home market, because there is no record evidence that sufficiently identifies the geographical breakdown of sales for either Hitech or Sundram. *Id.* at 7-8. *See* CV Profit & Selling Expenses Info, Part 4 at Ex. 7C; *see also* CV Profit & Selling Expenses Info, Part 5 at Ex. 10A. Therefore, Commerce examined Hitech's and Sundram's data against the first, third, and fourth criteria listed above, *i.e.*, production of comparable merchandise, its impact on customer base, and the contemporaneity of the data on the record, respectively. Third Remand Redetermination at 8. Commerce concluded that both Hitech and Sundram produce comparable merchandise and, therefore, have similar types of customers. *Id.* at 8-9.

Continuing with its analysis, Commerce determined that Sundram's financial statement mirrors the period of investigation, while Hitech's financial statement ends four months prior to the period of investigation, covering calendar year 2012. *Id*. at 9. *See* CV Profit & Selling Expenses Info, Part 5 at Ex. 10A. Commerce prefers to use contemporaneous data in selecting surrogate data to use in calculating accurate dumping margins. *See, e.g., Dupont Teijin Films v. United States*, 997 F. Supp. 2d 1338, 1346 (Ct. Int'l Trade 2014) ("Commerce's use of the

financial statement that most overlapped with the POR (*i.e.*, was the most contemporaneous) is both reasonable and consistent with its current practice."); *see also M S International, Inc. v. United States*, 547 F.Supp.3d 1254, 1276 (Ct. Int'l Trade 2021) (Commerce found that certain financial statements were "unusable or less preferable" when compared to other data, in part due to the fact that the "company's data was not contemporaneous.").  Contemporaneous data better reflect both the respondent's cost and sales but also the market condition and operating environment of the respondent.  Third Remand Redetermination at 9.  Therefore, Commerce reasonably concluded that Sundram's financial statement was the only remaining financial statement on the record reflecting profit from the production and sale of comparable merchandise during the entirety of the period of investigation.

Oman Fasteners contends that Commerce should not have selected Sundram's financial statement, and that Commerce failed to respond to the Federal Circuit's remand order.  *See* ECF No. 153, Oman Fasteners's Cmts. at 5-13.  Contrary to Oman Fasteners's contentions, as we demonstrated above, Commerce considered all eleven record financial statements and reasonably exercised its discretion to select the best information available on the record.  Commerce considered the completeness of the record evidence, and also weighed the quality of the evidence against the criteria established under 19 U.S.C. § 1677b(e)(2)(B)(iii) and in *Pure Magnesium from Israel* and *CTVs from Malaysia*, including accounting for the potential distortive effects of production of dissimilar merchandise.  Third Remand Redetermination at 10.

Furthermore, neither the Federal Circuit nor this Court directed Commerce to reach any particular result on remand.  Indeed, the Federal Circuit emphasized that it "do{es} not prescribe an ultimate result" and instructed that "{w}hatever result {Commerce} reaches upon such reconsideration, it must articulate an explanation of why its result is a reasonable one, given

relevant statutory duties, including the broad duty to strive for accuracy." *Mid Continent III*, 941 F.3d at 544-545.  Commerce articulated an explanation for its determination that is the result of a thorough analysis of the issues in accordance with its relevant statutory duties and, as discussed above, determined that the record supports the conclusion that Sundram's financial statements more closely reflect the experience of a nail producer during the period of investigation because it produces comparable merchandise, and its data are contemporaneous with the period of investigation.  *See* Third Remand Redetermination at 10; *see also* P.R. 103.

Oman Fasteners argues that other financial statements in the record, *i.e.*, LSI's partially translated financial statements and Al Jazeera's financial statements, are superior sources of constructed value profit.  *See* Oman Fasteners's Cmts. at 10-11.  The Court should flatly reject Oman Fasteners's thinly veiled attempts to resurrect these failed arguments.

Relying on the courts' decisions in *CP Kelco US, Inc. v. United States*, Oman Fasteners argues that, to comply with the courts' remand instructions here, Commerce must evaluate the "comparative deficiencies" of each of the potential constructed value profit sources in the record, particularly the LSI partially translated financial statements.  Oman Fasteners's Cmts. at 7-8 (citing *CP Kelco US, Inc. v. United States*, Slip Op. 15-27, 2015 WL 1544714 (Ct. Int'l Trade Mar. 31, 2015) (*CP Kelco I*) at 13; *CP Kelco US, Inc. v. United States*, 211 F. Supp. 3d 1338 (Ct. Int'l Trade 2017) (*CP Kelco II*), *affirmed in part and reversed in part*, 949 F.3d 1348 (Fed. Cir. 2020) (*CP Kelco III*).  By pressing its argument that Commerce should have engaged in a comparative analysis of LSI's financial statements against the Sundram statements, Oman

11

Fasteners cherry picks certain language from and excludes critical portions of *CP Kelco* and ignores the courts' holdings on this issue in this case.

In particular, in this case, the Court explained why it is unnecessary for Commerce to compare LSI's incomplete statements and Hitech's financial statements. *Mid Continent I*, 203 F. Supp. 3d at 1312-13 (finding that in *CP Kelco I* "substantial evidence did not support a finding that the statements at issue were in fact missing vital information" whereas in this case substantial evidence supported Commerce's finding that the LSI statement lacked vital information). The Court concluded that, because the missing information precluded Commerce from fully evaluating the appropriateness of the financial information set forth in these financial statements, "***Commerce had no obligation to compare the LSI statement to the Hitech statements, as Oman Fasteners argues. Commerce therefore acted reasonably and in accordance with prior practice when it discarded the LSI statement.***" *Id*. at 1313 (emphasis added). Following the same rationale, in *CP Kelco II*, the Court held that "***Commerce can disregard incomplete statements without first comparing and contrasting the strengths and weaknesses of all available data, if the missing information is reasonably deemed vital***.{}" 211 F. Supp. 3d at 1343 (footnote omitted; emphasis added) (citing *Mid Continent I*, 203 F. Supp. 3d at 1312-1313).

Moreover, the Federal Circuit affirmed the Court's judgment sustaining Commerce's rejection of LSI's partially translated financial statements without qualification. *Mid Continent III*, 941 F.3d at 541-542. Indeed, finding no abuse of discretion in Commerce's refusal to accept the partial translation, the Federal Circuit held that "Commerce's explanation fulfills its obligation to examine the governing legal standard and the facts and to articulate a satisfactory explanation for its decision." *Id*. at 541. The Federal Circuit explained that "{w}ith the LSI

12

financial information properly excluded from the proceeding, Commerce had to choose what source of information about profits to use in calculating constructed value of {Oman Fasteners}'s nails." *Id.* at 542.  This is precisely the choice that Commerce had to make on remand, and Commerce again made a reasonable determination based upon the record before it. Therefore, Oman Fasteners's suggestion that the remand mandates a comparison of the LSI and Sundram financial statements is misleading, at best.

Oman Fasteners's argument that Commerce should have used Al Jazeera's financial statements is unavailing.  Commerce reasonably relied upon the Federal Circuit's affirmance of Commerce's determination that none of the six Omani companies, which includes Al Jazeera, produced steel nails or any category of merchandise that is comparable to steel nails.  Third Remand Redetermination at 13-14 (citing *Mid Continent III*, 941 F.3d at 538-40).  Therefore, Commerce's determination not to rely upon Al Jazeera's financial statements is not unreasonable.

Oman Fasteners's alternative contention that Commerce "must" reopen the record to consider new sources for calculating constructed value profit, should be rejected, as well.  *See* Oman Fasteners's Cmts. at 11-13.  Interested parties bear the burden of developing the administrative record.  *QVD Food Co. v. United States*, 658 F.3d 1318, 1325 (Fed. Cir. 2011). Oman Fasteners failed to timely submit the fully translated LSI statements in this case, and Commerce properly rejected its submission as untimely.  The Federal Circuit held that there was no basis for disturbing Commerce's enforcement of its deadlines, and it explained that "[a] court cannot set aside a proper administrative procedure because it believes that properly excluded evidence would yield a more accurate result if the evidence were considered." *Mid Continent III*, 941 F.3d at 541 (citation and internal quotation marks omitted).  There is no basis for

13

reopening the record here, particularly when, in the absence of either a court order or

extraordinary circumstances, neither of which exist here, Commerce is not obligated to do so.

*See Essar Steel Ltd. v. United States*, 678 F.3d 1268, 1277-78 (Fed. Cir. 2012).  Here, Commerce

determined that the record contains "potential sources for {constructed value} profit and indirect

selling expenses} information reflecting profit from production and sale of comparable

merchandise during the POI and that {Commerce} could calculate {constructed value} profit and

{indirect selling expenses} ratios which reasonably reflect {Oman Fasteners's} profit

experience{.}"  Third Remand Redetermination at 17.  Given the underlying basis for Commerce

rejecting the fully translated LSI statements, the courts' affirmance of that determination, and the

lack of any extraordinary circumstances, Commerce's determination was rational and reasonable.

     Finally, any suggestion that Commerce's decision to not reopen the record and solicit

new financial statements was inconsistent with the remand orders is simply wrong.  Neither court

ordered Commerce to reopen the record of this investigation on remand.  *See generally Mid*

*Continent III*, 941 F.3d at 541-42; *Mid Continent IV*, 551 F. Supp. 3d 1368 ("Similarly, while *the*

*agency is not required to reopen the record*, such a decision is within the agency's discretion if it

determines that reopening would provide the most reasonable path forward." (emphasis added)).

Commerce's Third Remand Redetermination is consistent with the Remand Order, is based on

substantial evidence, is in accordance with law, and is reasonable.

CONCLUSION

For these reasons, we respectfully request that the Court sustain Commerce's Third

Remand Redetermination and enter judgment for the United States.

                                    Respectfully submitted,

                                    BRIAN M. BOYNTON
                                    Principal Deputy Assistant Attorney General
                                    /s/ Patricia M. McCarthy
                                    PATRICIA M. MCCARTHY
                                    Director

OF COUNSEL:                         /s/ Mikki Cottet
Ian A. McInerney                    MIKKI COTTET
Attorney                            Senior Trial Counsel
U.S. Department of Commerce         U.S. Department of Justice
Office of the Chief Counsel         Civil Division
    For Trade Enforcement and Compliance   Commercial Litigation Branch
1401 Constitution Avenue, NW        P.O. Box 480
Washington, D.C. 20230              Ben Franklin Station
Tel: (202) 482-4378                 Washington D.C. 20044
Email:  Ian.McInerney@trade.gov     Tel: (202) 307-0962
                                    Fax: (202) 514-7965
June 13, 2022                       Email: Mikki.Cottet@usdoj.gov

15

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

_____ )

MID CONTINENT STEEL & WIRE, INC.,                )
                                                 )
            Plaintiff/Consolidated               )
            Defendant Intervenor,                )
                                                 )
        v.                                       )        Consol. Court No. 15-00214
                                                 )
UNITED STATES,                                   )
                                                 )
            Defendant,                           )
                                                 )
and                                              )
                                                 )
OMAN FASTENERS, LLC,                             )
                                                 )
            Defendant-Intervenor/                )
            Consolidated Plaintiff.              )
_____ )

CERTIFICATE OF COMPLIANCE WITH WORD COUNT LIMITATION
IN THE COURT'S ORDER ENTERED MARCH 11, 2022

I, MIKKI COTTET, a Senior Trial Counsel in the Office of the Assistant Attorney

General, Civil Division, Commercial Litigation Branch, am responsible for filing the foregoing

response to comments, relying upon the Microsoft Word Word-Count feature of the word

processing system used to prepare this response, certify that this response complies with the

word count limitation set forth in the Court's Order of March 11, 2022, ECF No. 149, in that it

contains 3,871 words.

/s/ Mikki Cottet

**CERTIFICATE OF SERVICE**

I, Mikki Cottet, hereby certify that on this 13th day of June, 2022, I electronically filed a copy of the foregoing using the CM/ECF system, which sent a notification of such filing to all counsel of record.

/s/ Mikki Cottet