Slip Op. 22-88

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| MID CONTINENT STEEL & WIRE, INC.,<br><br>    Plaintiff/Consolidated Defendant-Intervenor,<br><br>v.<br><br>UNITED STATES,<br><br>    Defendant,<br><br>and<br><br>OMAN FASTENERS, LLC,<br><br>    Defendant-Intervenor/Consolidated Plaintiff. | Before: Mark A. Barnett, Chief Judge<br>Consol. Court No. 15-00214 |

## OPINION

[Sustaining Commerce's surrogate company selection to calculate constructed value profit in this antidumping duty investigation of certain steel nails from the Sultanate of Oman]

Dated: August 8, 2022

Adam H. Gordon, Jennifer M. Smith, and Lauren Fraid, The Bristol Group PLLC, of Washington, DC, for Plaintiff/Consolidated Defendant-Intervenor Mid Continent Steel & Wire, Inc.

Mikki Cottet, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for Defendant United States.  With her on the brief were Brian M. Boynton, Principal Deputy Assistant Attorney General, and Patricia M. McCarthy, Director.  Of counsel on the brief was Ian McInerney, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, DC.

Michael P. House, Andrew Cardias, and Shuaiqi Yuan, Perkins Coie LLP, of Washington, DC, for Defendant-Intervenor/Consolidated Plaintiff Oman Fasteners, LLC.

Barnett, Chief Judge: This matter arises out of a challenge to the U.S. Department of Commerce's ("Commerce" or "the agency") third remand results in its antidumping duty investigation of certain steel nails from the Sultanate of Oman. *See* Final Results of Redetermination Pursuant to [Third] Court Remand ("Third Remand Results"), ECF No. 150-1.[1] Commerce issued the Third Remand Results in response to an opinion by the U.S. Court of International Trade ("the court" or "CIT") holding that Commerce had not adequately explained its reliance on a financial statement from Hitech Fastener Manufacturer (Thailand) Co., Ltd. ("Hitech"), a third-country company, to determine constructed-value profit because the agency had not sufficiently considered the existence or potential impact of subsidies on Hitech's financial statements. *Mid Continent Steel & Wire, Inc. v. United States*, 45 CIT __, 551 F. Supp. 3d 1360 (2021) ("*Mid Continent 2021*").

In the Third Remand Results, Commerce chose to rely instead on the financial statements of Sundram Fasteners Limited ("Sundram"), another third-country company, rather than those of Hitech, to determine constructed-value profit. Third Remand Results at 2. For the reasons discussed herein, the court will sustain Commerce's determination.

---

[1] The administrative record associated with the Third Remand Results is contained in a public administrative record ("PR"), ECF No. 152-2, and a confidential administrative record, ECF No. 152-3. Parties submitted a public Joint Appendix ("JA"), ECF No. 160, containing record documents cited in their comments on the Third Remand Results.

## BACKGROUND

The instant matter originated when Plaintiff Mid Continent Steel & Wire, Inc. ("Mid Continent") and Consolidated Plaintiff Oman Fasteners, LLC ("Oman Fasteners") each challenged separate aspects of Commerce's determination that Oman Fasteners was selling goods at less than fair value, or "dumping," in the United States. *See Certain Steel Nails From the Sultanate of Oman*, 80 Fed. Reg. 28,972 (Dep't Commerce May 20, 2015) (final determination of sales at less than fair value), ECF No. 16-1, and accompanying Issues and Decision Mem., A-523-808 (May 13, 2015) ("I&D Mem."), ECF No. 16-2. Their respective cases were consolidated under this lead case. Consolidation and Scheduling Order at 2, ECF No. 18.

When determining whether a company is dumping, section 773(a) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1677b(a) (2012),[2] directs Commerce to calculate the difference between the export price and the normal value, a value usually based on the price at which the merchandise is sold in the exporting country or in a third country other than the United States. *Id.* If, however, there are insufficient home-market and third-country sales, as was the case with Oman Fasteners, Commerce calculates the "constructed value" of the merchandise to use as the normal value. 19 U.S.C. § 1677b(a)(4). Constructed value consists of the sum of (1) the cost of producing the merchandise; (2) amounts for selling, general, and administrative expenses; and (3) an amount for profit. *See* 19 U.S.C. § 1677b(e). The method used for the constructed

---

[2] Further citations to the Tariff Act of 1930, as amended, are to Title 19 of the U.S. Code, and references to the U.S. Code are to the 2012 edition, unless stated otherwise.

Consol. Court No. 15-00214																																																																																																																																																																																																																																																																																																																																																																																																																																																																																																																																																																																																																																																																																																																																																																																																																																																																																																																																																																																																																																																																																																																																																																																																																																																																																																																																																																																																																																																																																																																																																Page 4

value profit calculation depends on what data is available: Commerce either uses the "preferred method," which is based on actual profits and expenses, or, if no "actual data" are available, one of three alternative methods, among which there is no hierarchy or preference. *See SKF USA Inc. v. United States*, 263 F.3d 1369, 1374 (Fed. Cir. 2001).

In this case, because "actual data" were not available, Commerce chose the third of the alternative methods, which allows Commerce to utilize "any other reasonable method" to determine constructed value profit, subject to a profit cap provided in the statute. *See Mid Continent Steel & Wire, Inc. v. United States*, 941 F.3d 530, 535–36 (Fed. Cir. 2019) ("*Mid Continent CAFC*") (citations omitted); 19 U.S.C. § 1677b(e)(2)(B)(iii). Other reasonable methods may include, as Commerce chose in this case, the use of financial statements from a third-country company. *See Mid Continent CAFC*, 941 F.3d at 542–545.

As proposed sources of constructed value profit, Oman Fasteners submitted financial data from several Omani companies along with partially translated financial statements from L.S. Industry Co., Ltd. ("LSI"), a Thai producer of steel nails. *Id.* at 535. Mid Continent, in turn, submitted financial statements from two Taiwanese producers of steel nails; those of Hitech, a Thai producer of steel screws; and those of Sundram, an Indian producer of auto parts and fasteners. *Id.* at 535–36; I&D Mem. at 14.

Commerce initially chose Hitech as the source of constructed value profit, declined to consider the partially translated LSI statements, and found no profit cap available to apply to the constructed value profit determination. *Mid Continent CAFC*,

941 F.3d at 536. In choosing Hitech's financial statements, Commerce found that a note on Hitech's financial statements stating that "The company has been support [*sic*] for production screws (SCREW) Category 4.7 Manufacture of wire products, metal wire, Promotional Number 1447/2538 on July 10, 1995," did not establish that Hitech's receipt of a countervailable subsidy, even though the program indicated by the above quotation had "previously [been] found to be countervailable." *See* Final Results of Redetermination Pursuant to [Second] Court Order, ECF No. 135-1.

These findings were challenged, and subsequent litigation has led to three remands.[3] Familiarity with this procedural history is presumed.

Most recently, this court remanded the determination to Commerce to further explain or reconsider the choice of Hitech's financial statements, consistent with this court's opinion and that of the Federal Circuit in *Mid Continent CAFC*. *Mid Continent 2021*, 551 F. Supp. 3d at 1365. The court found that Commerce had failed to justify its reliance on Hitech's financial statements because it "did not explain why this case is distinguishable from a case in which Hitech's financial statements were disregarded due to evidence of a countervailable subsidy" or "why, given its finding that the potential subsidies could not be quantified, Hitech's financial statements were a better choice

---

[3] For the additional history in this case, see *Mid Continent Steel & Wire, Inc. v. United States* ("*Mid Continent I*"), 41 CIT __, 203 F. Supp. 3d 1295 (2017), and *Mid Continent Steel & Wire, Inc. v. United States* ("*Mid Continent II*"), 41 CIT __, 273 F. Supp. 3d 1348 (2017). *Mid Continent I* remanded the determination, and Commerce issued the first remand results. *Mid Continent II* affirmed the first remand results; that decision was appealed to the U.S. Court of Appeals for the Federal Circuit ("Federal Circuit"), which remanded the determination back to this court for further proceedings consistent with *Mid Continent CAFC*, 941 F.3d 530.

Consol. Court No. 15-00214                                                                                          Page 6

than Sundram's." *Id.* at 1366.  The court ordered Commerce to "seriously engage with the possible inclusion of subsidies" in Hitech's statements, and to "address whether a comparative analysis inclusive of the other financial statements on the record is appropriate." *Id.* at 1368.  The court did not require Commerce to reopen the record, but instead left that decision to Commerce's discretion.  *Id.*

In response to *Mid Continent 2021*, Commerce issued the Third Remand Results in which the agency continued to use the alternative method for calculating constructed value pursuant to 19 U.S.C. § 1677b(e)(2)(B)(iii), that is, "any other reasonable method," and relied on third-country sources as affirmed in *Mid Continent CAFC*.  Third Remand Results at 4.  In these Third Remand Results, Commerce selected Sundram, rather than Hitech, as the source of financial statements to calculate constructed value profit, resulting in a dumping margin of 4.22 percent.  *Id.* at 2, 20.

Commerce addressed each of the eleven financial statements on the record in the Third Remand Results.  Of the eleven statements, six were from Omani companies.  *Id.* at 4.  Commerce found that these companies did not "produce[] steel nails or any type of merchandise comparable enough to steel nails to satisfy the statutory preferences."  *Id.* at 4–5.  Commerce also declined to use either of the two Taiwanese financial statements or LSI's financial statements because they lacked complete English translations.  *Id.* at 5.  The agency noted that the Federal Circuit upheld its decision not to rely on LSI's partially translated financial statements and to reject the late submission of full translations.  *Id.* at 5 & n.23 (citing *Mid Continent CAFC*, 941 F.3d at 540–42).  Commerce found that "the Taiwanese [financial statements] and LSI's [financial

Consol. Court No. 15-00214                                                                                              Page 7

statements] contain significant defects which prevent Commerce from effectively evaluating their appropriateness as sources of [constructed value] profit." *Id.* at 15.

Between the two remaining financial statements on the record, Hitech's and Sundram's, Commerce chose to use Sundram's. *See id.* at 5–10, 13–16. Commerce found that both companies received subsidies and that both companies produced comparable merchandise. *Id.* at 6, 16. While Commerce had previously found that Hitech's financial statements did not contain evidence of a subsidy, this time the agency concluded that Hitech's statements "contain evidence of subsidies." *Id.* at 6 (analogizing to the facts examined in *Steel Wire Garment Hangers From the People's Republic of China*, 79 Fed. Reg. 65,616 (Dep't Commerce Nov. 5, 2014) (prelim. results of antidumping duty admin. review; 2012-2013)). Commerce also found that Sundram received subsidies of "30 Lakhs during the 2013–14 period" from the "state government of Uttarakhand as special capital subsidy, for setting up an industrial undertaking in the state." *Id.* at 6–7 & n.26 (citing Pet'r [Mid Continent's] [Constructed Value] Submission (Oct. 31, 2014), Ex. 10A,[4] PR 104, JA Tab 4).

Acknowledging that "it is not [the agency's] preference to use data which include subsidies, [Commerce] consider[ed] Hitech and Sundram equal in that they both indicate that they received some form of a subsidy." *Id.* at 7. The agency went on to compare the two, finding that "[b]ecause the record shows that no other companies derived profit from the production and sale of comparable merchandise, we must rely on

---

[4] Although Commerce cites to Exhibit 10A to support this assertion and the cover page to Tab 4 states 10A, the cover page to the exhibit is labeled 9A.

the [financial statements] of either Hitech or Sundram, even though both companies received some form of a subsidy." *Id.* Commerce's stated practice in such a circumstance involves considering:

> (1) the similarity between a potential surrogate's business operations and products and those of the respondent; (2) the extent to which a potential surrogate has sales in the United States and the home market; (3) the contemporaneity of the surrogate data; and (4) the similarity of customer base between a potential surrogate and the respondent.

*Id.* at 7–8 (citations omitted). Commerce noted that it was unable to consider criterion (2) because "the record of this investigation does not sufficiently identify the geographical breakdown of sales for either Hitech or Sundram." Third Remand Results at 8. Commerce also found that criterion (4) did not weigh in favor of either Hitech or Sundram, as both likely had "customer bases [that should] also closely match those of Oman Fasteners." *Id.*

Commerce found that "[b]oth Hitech and Sundram produce comparable merchandise," with Hitech producing "various screws and rivets (i.e., fasteners) and Sundram produc[ing] high tensile fasteners, all of which [Commerce considered] comparable to steel nails." *Id.* at 8. Accordingly, Commerce found that "their respective production experiences, raw materials consumption, supply and demand conditions, and facilities should resemble those of Oman Fasteners," and that "their respective profit experiences and customer bases should also closely match those of Oman Fasteners." *Id.* Citing its preference to use contemporaneous data, Commerce noted that Sundram's financial statements were contemporaneous with the period of investigation, while Hitech's were not. *Id.* at 9. Commerce considered this sufficient to

tilt the scales in favor of using Sundram's financial statements despite "dissimilar" merchandise making up 64 percent of Sundram's production. *Id.* at 9–10.

Oman Fasteners opposes the Third Remand Results, arguing that Commerce did not sufficiently compare the financial statements on the record and that Sundram's financial statements were improperly selected. *See generally* Cmts. of [Oman Fasteners] in Opp'n to Commerce Dept.'s Remand Redetermination ("Opp'n Cmts.") at 2, 10–11, ECF No. 153. Defendant United States ("The Government") and Mid Continent support the Third Remand Results. *See generally* Deft.'s Resp. to Cmts. on Remand Redetermination ("Govt. Reply"), ECF No. 159; Cmts. of [Mid Continent] on Final Remand Redetermination ("Mid Continent Reply"), ECF No. 158.

### JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to 19 U.S.C. § 1516a(a)(2)(B)(i) and 28 U.S.C. § 1581(c). The court will uphold an agency determination that is supported by substantial evidence and otherwise in accordance with law.

### DISCUSSION

**I.　　Parties' Contentions**

Oman Fasteners contends that Commerce did not sufficiently explain its preference for Sundram's financial statements over LSI's or those of Al Jazeera (which is one of the six Omani companies that Commerce determined does not produce comparable merchandise). Opp'n Cmts. at 2, 10–11; *see also* Third Remand Results at 13. Oman Fasteners argues that because both Hitech's and Sundram's financial statements contained evidence of subsidies, Commerce should have rejected them in

favor of another financial statement on the record. Opp'n Cmts. at 6–7. Oman Fasteners also asserts that Commerce ignored this court's remand instructions by not considering and comparing all financial statements on the record side-by-side—as opposed to rejecting all but two before commencing the comparison. *Id.* at 7–8 (citing *Mid Continent 2021*, 551 F. Supp. 3d at 1367; *CP Kelco US Inc. v. United States* ("*CP Kelco I*"), Slip Op. 15-27, 2015 WL 1544714 (CIT Mar. 31, 2015)). Oman Fasteners contends that had Commerce properly compared all of the financial statements on the record, rather than reducing the comparison to Sundram and Hitech, the agency would have found that LSI or, alternatively, Al Jazeera, was a better alternative. *Id.* at 10. Lastly, Oman Fasteners argues that Commerce should have reopened the record in order to allow Oman Fasteners to submit full translations of LSI's financial statements, because, in its view, there was no other suitable financial statement on the record. *Id.* at 11–13.

The Government contends that "Commerce reasonably tied its determination to the governing statutory standard and to the record evidence by indicating what statutory interpretations the agency adopted and what facts the agency found." Govt. Reply at 5–6 (citing *Mid Continent CAFC*, 941 F.3d at 537). The Government contends that Commerce was not required to compare the financial statements, *id.* at 12, and that Commerce "reasonably exercised its discretion" in compliance with the court's remand order*, id.* at 10. Emphasizing that the Federal Circuit upheld Commerce's refusal to use LSI's incomplete financial statements or accept the late submission of the full version, the Government also contends that the missing information in LSI's financial statements

rendered that information unusable because Commerce could not evaluate its appropriateness or accuracy. *Id.* at 12. The Government also supports Commerce's rejection of Al Jazeera's financial statements because that company does not produce comparable merchandise. *Id.* at 13. Lastly, the Government contends that Commerce was not required to reopen the record because Commerce properly enforced its deadlines, there were other sources of constructed value profit on the record, and the Federal Circuit already affirmed this decision. *Id.* at 13–14.

Mid Continent contends that because Hitech's financial statements were not contemporaneous with the period of investigation but Sundram's were, Commerce's selection of Sundram's financial statements for constructed value profit calculations should be sustained. Mid Continent Reply at 2–3, 8. Mid Continent argues that Oman Fasteners' citation to *CP Kelco* is inapposite. *Id.* at 3–4. Lastly, Mid Continent contends that the amount of Sundram's subsidy was quantifiable and small, making the effect of the subsidy "negligible" in terms of Sundram's financial experience for the relevant time period. *Id.* at 7–8.

## II.    Analysis

As discussed in the "Background" section above, the court reviews the Third Remand Results against the backdrop of its prior opinions in this case and the opinion of the Federal Circuit. Therein, the Federal Circuit restated the standard against which the court reviews Commerce's determinations, including that substantial evidence is "such relevant evidence as a reasonable mind might accept to support a conclusion" considering the record as a whole. *Mid Continent CAFC*, 941 F.3d at 537 (citing

*Novartis AG v. Torrent Pharm. Ltd.*, 853 F.3d 1316, 1324 (Fed. Cir. 2017); *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487–88 (1951)). Additionally, "Commerce must provide an explanation that is adequate to enable the court to determine whether its choices are actually reasonable." *Id.*; *see also CS Wind Vietnam Co. v. United States*, 832 F.3d 1367, 1376 (Fed. Cir. 2016) (finding that Commerce had "failed to meet its obligation to set forth a comprehensible and satisfactory justification for its approach as a reasonable implementation of statutory directives supported by substantial evidence"); *Yangzhou Bestpak Gifts & Crafts Co. v. United States,* 716 F.3d 1370, 1378 (Fed. Cir. 2013) (finding that Commerce must "examine the record and articulate a satisfactory reason for its action"). "[T]he required explanation must reasonably tie the determination under review to the governing statutory standard and to the record evidence by indicating what statutory interpretations the agency is adopting and what facts the agency is finding." *Mid Continent CAFC*, 941 F.3d at 537.

The Federal Circuit has emphasized that comparing the options on the record and considering their "comparative deficiencies" is an important part of Commerce's selection of financial statements for determining constructed value profit. *Id.* at 544 ("The size of any subsidies would obviously be relevant, as would the comparative deficiencies of the alternative sources."). Oman Fasteners cites to *CP Kelco I* to argue that Commerce was required to compare, side-by-side, all eleven financial statements, and that this comparison would have led the agency to choose either LSI or Al Jazeera's financial statements. Opp'n Cmts. at 7–8 (citation omitted). In *CP Kelco I*, the court remanded Commerce's selection of the financial statements of a company that

contained evidence of countervailable subsidies over financial statements that were not fully translated. *CP Kelco I*, 2015 WL 1544714, at *7–8. The *CP Kelco I* court found that "Commerce must faithfully compare the strengths and weaknesses of each [potential surrogate-data source] before deciding which to use." *Id.* at *7.

While *CP Kelco I* required Commerce to fully compare the two financial statements at issue, a full review of the *CP Kelco* litigation shows that the case does not stand for the proposition that a side-by-side analysis of every financial statement on the record is always required. *See CP Kelco US Inc. v. United States* ("*CP Kelco VI*"), 949 F.3d 1348, 1359 (Fed. Cir. 2020); *CP Kelco US Inc. v. United States*, 41 CIT __, __, 211 F. Supp. 3d 1338, 1343 (2017). In *CP Kelco VI*, the Federal Circuit upheld Commerce's determination to reject incomplete financial statements "after making a fact-sensitive finding that the [incomplete financial statements were] missing 'vital' information." 949 F.3d at 1359. The appellate court upheld Commerce's decision not to compare directly each of the financial statements when Commerce had sufficiently explained that the missing paragraphs in the rejected financial statement were a "key component of a company's financial statements" and "integral" to the necessary calculations—that is, of "critical importance." *Id.*

Here, while Commerce did not directly compare each of the eleven financial statements on the record, Commerce explained its decision to reject the financial statements from the six Omani companies, the two Taiwanese companies, and LSI, such that it did not need to compare these statements to those of Hitech and Sundram. Regarding LSI's financial statements and the Taiwanese financial statements,

Commerce explained that there was "no way to ascertain whether the companies have properly captured their revenues and costs (and thereby their profits) in accordance with their respective [generally accepted accounting principles] or whether the [financial statements can serve as reliable sources for the profit 'normally' experienced by a producer of steel nails.'" Third Remand Results at 14–15. The agency concluded that the partially translated financial statements "contain[ed] significant defects which prevent[ed] Commerce from effectively evaluating their appropriateness as sources for [constructed value] profit." *Id.* at 15. In addition, Commerce highlighted that the Federal Circuit upheld Commerce's decision not to use the LSI or Taiwanese statements because they were missing what Commerce called "vital" information. *Id.* at 5 & n.23 (citing *Mid Continent CAFC*, 941 F.3d. at 540–42). Consistent with the requirements outlined in *CP Kelco VI*, 949 F.3d at 1359, and *Mid Continent CAFC*, 941 F.3d at 540–42, Commerce found that these defects rendered the LSI and Taiwanese financial statements unusable. Accordingly, Commerce adequately explained its reasons for not relying on these financial statements to determine constructed value profit.

      Regarding the rejection of the six Omani companies' financial statements, Commerce found that "data reflecting the production and profit from sale of comparable merchandise are always preferable to a profit experience wholly dissimilar to the mandatory respondent," indicating that because none of the six Omani companies produced comparable merchandise, they were not "suitable source[s]" of "[constructed value] profit information." Third Remand Results at 15; *see also Mid Continent CAFC*, 941 F.3d at 542 (explaining that Commerce must reasonably choose, given the record,

a surrogate company that accurately reflects the home market profit experience of the respondents in order to "build into a fair sales price for the particular merchandise"). Commerce also explained, elsewhere in the Third Remand Results, that "producers of comparable merchandise will likely share a number of similarities in their respective production experiences and raw material consumptions, . . . [such that their experiences] should resemble those of Oman Fasteners." Third Remand Results at 8. Indeed, having found that "data about sales in the ordinary course of trade"—a phrase that means "the conditions and practices which . . . have been normal in the trade under consideration with respect to merchandise of the same class or kind— is necessary for the preferred method to apply, the Federal Circuit upheld Commerce's decision not to use home-market financial statements in part because no Omani company produced comparable merchandise. *Mid Continent CAFC*, 941 F.3d at 539 (quoting 19 U.S.C. § 1677b(e)(2)(A), and § 1677(15)).

Nevertheless, Commerce went on to explain further its rejection of the Omani companies' data: Commerce found that their production of wholly non-comparable merchandise meant that "all six Omani [financial statements] likely do not share similarities to Oman Fasteners in their respective production experiences or raw material consumptions and are not subject to the same supply and demand conditions in the global marketplace as Oman Fasteners" and, thus, constitute "less ideal sources" of information. Third Remand Results at 13. Because it is within Commerce's discretion to choose which criteria to prioritize in making these determinations, and Commerce explained how it reached its determination and why it considered

comparability to be so important, the court finds that Commerce's determination not to use the Omani companies' financial statements was supported by substantial evidence.

Commerce's explanation of its rejection of the LSI, Taiwanese companies', and Omani companies' financial statements was sufficient to justify its choice not to further compare these financial statements to other financial statements on the record but, instead, to use an iterative process to eliminate these statements from consideration. *See* Third Remand Results at 4–5.  Because Hitech and Sundram were the only two companies with sufficient information on the record that would accurately reflect the experience of a nail producer, Commerce found, these were the only two for which a detailed comparison of their statements was warranted.  *See id.* at 8.  Oman Fastener's remaining arguments in favor of the rejected financial statements are unpersuasive.

Commerce's comparative analysis of the two financial statements satisfied the remand order in *Mid Continent 2021*.  The court did not require Commerce to select Sundram's financial statements; instead, it required Commerce to compare Hitech's and Sundram's financial statements in a meaningful way, addressing any subsidies, the similarity of each company's production, and other considerations Commerce considered relevant.  *See Mid Continent 2021*, 551 F. Supp. 3d at 1368.  In the Third Remand Results, Commerce addressed the court's question of "why [certain] language [related to subsidies on Hitech's financial statements] is sufficient to be considered 'evidence of a subsidy' in *Steel Wire Garment Hangers From China* yet may be ignored in this case."  *Id.*  The agency examined the evidence and found that there was insufficient difference between Hitech's financial statements in this case and in *Steel*

*Wire Garment Hangers From China* to justify a different finding. Third Remand Results at 6.

The agency noted that although it preferred not to use data which included subsidies, Hitech and Sundram were "equal" in that both received subsidies. *Id.* at 7. Therefore, Commerce turned to other considerations, explaining how the four criteria for selecting surrogate financial statements applied to its evaluation of Hitech and Sundram. *Id.* at 7–8.

With a focus on contemporaneity and comparability of merchandise, Commerce provided a well-reasoned explanation of its choice of Sundram over Hitech. The agency explained that producing comparable merchandise is an important consideration because it will likely lead to similarities in production experience and raw material consumption with similar supply and demand conditions affecting raw material inputs. *Id.* at 8. Thus, Commerce took into account Sundram's production of comparable merchandise when it weighed this criterion. *See id.* at 9.

Commerce also explained how contemporaneity played into its selection of Sundram, finding that while Hitech's financial statements cover a period ending four months before the period of investigation, Sundram's financial statements match the period of investigation. *Id.* Commerce explained that it prefers contemporaneous data because they "better reflect a mandatory respondent's cost and sales data, along with the same market conditions and operating environment of the respondent." *Id.* at 9–10.

Commerce concluded that "the record contains two companies with imperfect data which produce and sell comparable merchandise," and it found Sundram's data to

be superior given the above criteria; therefore, Commerce selected Sundram's financial statements. *Id.* at 10. Commerce acknowledged that neither Hitech's nor Sundram's financial statements were perfect; however, Commerce explained why it chose Sundram's financial statements, presenting the evidence it relied upon and the criteria it prioritized. As such, Commerce's choice of Sundram's financial statements is supported by substantial evidence and in accordance with law.

Oman Fasteners asserts that Commerce should be required to re-open the record to allow Oman Fasteners to submit a full translation of LSI's financial statements. Opp'n Cmts. at 11–13. The court will not require Commerce to reopen the record.

In *Mid Continent 2021*, the court stated that "the agency is not required to reopen the record," but that "such a decision is within the agency's discretion if it determines that reopening would provide the most reasonable path forward." 551 F. Supp. 3d at 1368. Here, Commerce found that "the record contains sufficient [financial statements] in order to render an accurate determination" and, accordingly, it was unnecessary to reopen the record. Third Remand Results at 17. Reopening the record "is not something the court will require simply based on a plaintiff's argument that better information is available." *Pro-Team Coil Nail Enter., Inc. v. United States*, Slip Op. No. 22-84, 2022 WL 2783885, at *8 (CIT Jul. 15, 2022). Instead, "Commerce retains significant discretion to determine whether to reopen the record on remand." *Id.*

Interested parties bear the burden of developing the record, *QVD Food Co. v. United States*, 658 F.3d 1318, 1324 (Fed. Cir. 2011), and the court will not "set aside application of a proper administrative procedure because it believes that properly

Consol. Court No. 15-00214                                                                                                                           Page 19

excluded evidence would yield a more accurate result if the evidence were considered," *Mid Continent CAFC*, 941 F.3d at 541 (quoting *PSC VSMPO-Avisma Corp. v. United States*, 688 F.3d 751, 761 (Fed. Cir. 2012)).  The interests of finality also suggest that the court should limit interfering with the agency's procedures and deadlines.  *See, e.g., Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 554–55 (1978); *Pro-Team*, 2022 WL 2783885, at *8.

      Having found that substantial evidence supports Commerce's choice of Sundram's financial statements among the eleven financial statements on the record, the court finds no error in Commerce's determination that "reopening the record was not necessary."  Third Remand Results at 17.  Here, Commerce properly enforced its deadlines when it declined to allow Oman Fasteners to submit LSI's complete translated financial statements after the deadline for such information and the court will not disturb that decision.

CONCLUSION

      Based on the foregoing, the court will sustain Commerce's Third Remand Results.  Judgment will enter accordingly.

                                              /s/     Mark A. Barnett
                                            Mark A. Barnett, Chief Judge

Dated: August 8, 2022
       New York, New York